i 71   601|
!128   659|
71   601
32a   20
i 71   601
155   513
71   601|
105a ³170|

# THE CHICAGO AND ALTON RAILROAD COMPANY

*v.*

# ELLEN MURRAY.

1. PRACTICE—*where there is a general verdict and several special findings.* Under the act of 1872, in regard to practice, where there is a general verdict and several special findings by the jury, the general verdict should not be set aside because some of the special findings are inconsistent with it, but the court should examine and construe the special finding of the jury as a whole, and if, when thus considered, it is not inconsistent with the general verdict, judgment should be rendered on the general verdict.

2. NEGLIGENCE—*the same degree of care not required of a child as of a person of mature age.* The rule of law in regard to the negligence of an adult, and the rule in regard to that of an infant of tender years, are quite different. The adult must give that care and attention for his own protection that is ordinarily exercised by persons of discretion and intelli-

gence, and if he fails to do so, and is injured, his injury is the result of his own folly, and can not be visited upon another. Of the infant of tender years, less discretion is required, and the degree depends upon his age and knowledge. The caution required is according to the maturity and capacity of the child, and this is to be determined in each case by the circumstances of the case.

3. DAMAGES—*whether excessive.* Where the plaintiff, a girl of seven years of age, was run over by a railroad car, and had one leg cut off and her right hand so crushed as to cause the amputation of two fingers, besides being otherwise injured, a verdict for $8100 was held to be not unreasonable.

APPEAL from the Circuit Court of McLean county; the Hon. THOMAS F. TIPTON, Judge, presiding.

Messrs. WILLIAMS, BURR & CAPEN, for the appellant.

Mr. W. W. O'BRIEN, Messrs. STEVENSON & EWING, and Messrs. HUGHES & McCART, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action on the case, brought by appellee against appellant, in the circuit court of McLean county. A trial was had before a jury, and appellee obtained a verdict for $8100. The court overruled a motion for a new trial, and rendered judgment upon the verdict.

As is shown by the record, Ellen Murray, appellee, on the 30th day of July, 1870, while crossing the railroad track of appellant, where the road is intersected by Chestnut street, in the city of Bloomington, was run over by an engine, one leg cut off, her right hand crushed in such a manner that it was necessary to amputate two fingers, besides being otherwise injured. At the time, appellee was a small girl, seven years and eight months old.

Appellee bases her right of recovery upon the ground that the accident occurred from the gross negligence of the servants of the railroad company, and that she was exercising ordinary care; or if there was negligence on her part, it was slight, in comparison with that of the company. On the

other hand, it is insisted by appellant that the injury received by appellee was caused by gross negligence on her part.

The principal errors relied upon by appellant to reverse the judgment are : 1st. The court erred in refusing to render judgment for appellant on the special verdict. 2d. The court erred in overruling a motion for a new trial. 3d. The 1st, 3d and 6th instructions given for appellee are erroneous.

At the instance of appellee, the jury returned a special verdict as follows, in reply to the following interrogatories:

" 1.   Was the defendant or its servants guilty of gross negligence in the management of the engine at the time plaintiff was struck?   Ans.—Yes.

2.   Did the negligence of the defendant (if any) greatly preponderate over the negligence of the plaintiff?   Ans.—Yes.

3.   Could the engineer or fireman in charge of the engine have avoided the injury to plaintiff by looking in the direction in which the engine was going at the time plaintiff was struck?   Ans.—Yes.

4.   Was the watchman of defendant attending to his duty on the crossing at the time plaintiff was struck.   Ans.—No.

5.   If the jury find such watchman was not attending to his duty at the time of the injury, then they will answer whether or not he could have prevented the injury by attending to his duty at that time?   Ans.—Yes."

And to the following interrogatories on behalf of the defendant :

"1.   Was the plaintiff, at the time of the injury, of sufficient age and discretion to justify her parents in sending her across this crossing unaccompanied by any one?   Ans.—Yes.

2.   Was the plaintiff, at the time of the injury, of sufficient age and discretion to know that a locomotive engine in motion was a dangerous thing, and that if one should run over her it would kill or injure her?   Ans.—Yes.

3. Was the plaintiff, at the time of the injury, of sufficent age and discretion to know that it was her duty, before attempting to cross a railroad track, to look to see if a train or engine was about to cross the same place at the same time? Ans.—Yes.

4. Could the plaintiff, by looking before her, and exercising due care, have seen the engine and avoided the injury? Ans.—Yes.

5. Did the plaintiff know that an engine in motion was dangerous? Ans.—Yes.

6. Did the plaintiff look to see whether or not trains or engines were crossing the street on the track before she stepped on the track? Ans.—We find that there was no proof upon the question."

The act of 1872, in regard to practice in courts of record, section 51, declares, the court may, at the request of either party, require the jury to return a special verdict upon any fact or facts in issue in the cause, which shall be entered of record and proceedings had thereon as in other cases. When the special finding of the fact is inconsistent with the general verdict, the former shall control the latter, and the court shall give judgment accordingly.

Was there in this case such an inconsistency between the general verdict and the special finding, as required the court to set aside the general verdict? We think not. Had the court disregarded entirely the special finding at the instance of appellee, and considered the special finding at the request of appellant, then, perhaps, the court would have been justified in granting the motion of appellant to set aside the general verdict.

But by the special verdict which was rendered in reply to interrogatories of appellee, the jury found appellant guilty of gross negligence in the management of the engine; that the negligence of appellant greatly preponderated over that of appellee.

It was the duty of the circuit court, in passing upon the special finding of the jury, to examine and consider it as a whole, and if the special finding thus considered was not inconsistent with the general verdict, to render judgment upon the general verdict. Upon this plan of construction, which we have no doubt was adopted by the circuit court, it appears, by the answer to appellant's 4th interrogatory, that appellee was guilty of negligence, but by the answer to the 1st interrogatory of appellee, it appears that appellant was guilty of gross negligence; and by the answer to the 2d interrogatory, it seems the jury found the negligence of appellant greatly preponderated over that of appellee. The only reasonable construction to be placed upon these special findings is, that the negligence of appellee was slight, in comparison with that of appellant, and when the special verdicts are considered together, there is not such an inconsistency between them and the general verdict as to authorize the court in disregarding the general verdict.

Under the second ground urged for a reversal of the judgment, it is argued that the special finding of the jury is against the weight of evidence. We shall not stop to inquire whether the numerous special findings in this case are all of them sustained by the weight of the evidence. We have no doubt the deliberations of the jury are, in many cases, embarrassed by voluminous instructions, drawn by ingenious counsel, calling for special findings, and the practice ought not to be encouraged. Where the general verdict, and judgment of the court rendered upon it, is sustained by the weight of the evidence, we will not disturb it.

Appellant, at the place where this accident happened, had six tracks crossing the street. A large number of the citizens of Bloomington resided west of the railroad, and used this street and crossing in going to and from the business portion of the city. Appellee had been sent across the track on an errand, and, on her return, crossed over five tracks,

and on reaching the sixth, she was struck by an engine which, with a tender attached, was backing over the crossing.

We are satisfied, from a careful examination of the evidence, the jury was justified in finding that appellant's servants in charge of the engine were guilty of gross negligence. It was a fact well known, that persons were constantly crossing the railroad tracks at this crossing, but, notwithstanding this, the fireman on the engine testifies they were backing the engine over the crossing, and neither he nor the engine-driver was looking ahead, to see if any person was in the act of crossing. He says he was watching the flagman. Some one from the construction train was throwing mud at him, and the engineer was looking in some other direction. Had they been looking ahead on the track, they would have seen appellee in time to have stopped the engine. He says there was nothing to prevent him from seeing the girl, had he been looking.

It is very apparent that those in charge of the engine were backing it across this street without paying the slightest attention to persons who might at the moment be crossing the track. Such reckless conduct can not be regarded otherwise than as gross negligence.

It is, however, insisted that appellee was guilty of gross negligence, and, upon that ground, can not recover.

It is clearly the duty of a person about to cross a railroad track, to look and see, before crossing, if there is danger from trains that may be passing on the track. The engine that struck appellee was in full view at the time she attempted to cross, but whether it was standing still or moving at a slow rate of speed, it is somewhat difficult to tell, as the evidence upon that point is conflicting. The engineer and fireman say it was moving at a slow rate of speed. On the other hand, one Fitzpatrick, who saw the accident, testifies : "It appeared to me the train had stopped before it struck the girl. It seemed to me the girl was two or three steps from the engine when she stepped upon the track. It seemed to me the en-

gine was stopping when she stepped on the track, and then, as she stepped on the track, started up and caught the girl."

It was for the jury to determine, from the evidence, whether the engine was in motion at the time appellee attempted to cross the track, or standing still, and if they found the engine was standing still, and we can not say the evidence would not justify it, then they would be justified in arriving at the conclusion that the negligence of appellee was slight, in comparison with that of appellant. When appellee reached the track, if she saw an engine only a few feet from the crossing, standing still, one of her years might reasonably conclude she could cross the track without danger.

That degree of care can not be expected, nor does the law require it, of a child the age of appellee, that is required of a person of mature age. To hold a child of tender years to as high a degree of care as an adult, would neither be just nor reasonable, and we can not yield our assent to such a doctrine.

As early as 1861, this court announced the principle, that a child could not be required to exercise the same degree of care as one of mature years. *Chicago, Burlington and Quincy Railroad Co.* v. *Dewey*, 26 Ill. 258.

This has been followed by the case of *Railroad Company* v. *Gladman*, 15 Wallace, 408, in which the Supreme Court of the United States say: "The rule of law in regard to the negligence of an adult, and the rule in regard to that of an infant of tender years, is quite different. By the adult, there must be given that care and attention for his own protection that is ordinarily exercised by persons of intelligence and discretion. If he fails to give it, his injury is the result of his own folly, and can not be visited upon another. Of an infant of tender years, less discretion is required, and the degree depends upon his age and knowledge. Of a child of three years of age, less caution would be required than one of seven, and of a child of seven, less than one of twelve or fifteen. The caution required is according to the maturity

and capacity of the child, and this is to be determined in each case by the circumstances of the case."

Viewing the evidence in connection with the principle announced in the authorities cited, *supra,* when we take into consideration the age of appellee, we can not say the jury have found against the weight of evidence.

It is claimed by appellant the first instruction given for appellee, in substance, directed the jury that, if the evidence showed negligence on the part of appellant, it would be liable, regardless of whether appellee was negligent. Upon a careful examination of the instruction, we fail to find it liable to the objection taken.

Neither do we think the third or sixth instructions were liable to mislead the jury.

As to the damages, while the amount of the verdict is large, yet, when the character of the injury is considered, we can not say the amount fixed upon by the jury is unreasonable, and hence we can not interfere.

As we see no substantial error in the record, the judgment will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE McALLISTER : I am constrained to withhold my concurrence in the opinion of the majority of the court, because, as it seems to me, the special findings are substantially inconsistent with the general verdict. The degree of discretion of which the plaintiff was possessed, as specially found, and the degree of negligence imputed to her, should, it seems to me, prevent a recovery, according to the doctrine of this court upon that head, as laid down in the *Jacobs case,* 20 Ill. 478, and the subsequent cases in this court.