# The Toledo, Wabash and Western Railway Co.
## v.
## Jacob Fredericks.

1. MASTER AND SERVANT—*duty of former to provide safe machinery.* It is the duty of a railroad company to furnish suitable and safe machinery, and the law imposes upon them a high decree of care in this regard.

2. The machinery and cars furnished by railroad companies, for use, ought not to be so unskillfully constructed that the slightest indiscretion on the part of the operatives would prove fatal; and where they are so constructed, it is such negligence as will render them liable for damages occasioned thereby to an employee who is ignorant of such unskillful construction.

APPEAL from the Circuit Court of Sangamon county; the Hon. CHARLES S. ZANE, Judge, presiding.

The facts are stated in the opinion of the court, except the amount of the judgment in the court below, which was $5000.

Messrs. HAY, GREENE & LITTLER, for the appellant.

Mr. N. M. BROADWELL, and Mr. WM. M. SPRINGER, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The negligence attributed to appellant, as a basis of recovery in this action, consists in the fact, the coupling apparatus of its cars was so improperly and unskillfully constructed as to be dangerous to the operatives, which was unknown to appellee when he engaged in its service, but which was, or could have been, known to appellant by the exercise of that degree of care the law imposes upon all railroad companies.

Appellee was employed as a switchman in the yards of the company at Springfield. It was his duty to couple cars and assist in making up trains. While engaged in the performance of his duties, his hand was caught between the deadwood on the engine and what is called the "ratchet-wheel," attached to the caboose car, and was so badly crushed as to cause a very severe and permanent injury. · He was in the act of attempting to couple the tender with the caboose car.

There can scarcely be a doubt the draw-bar on the caboose car was too short, which permitted the tender and car to come so close together as to cause the accident. The experiments subsequently made by the employees of the company show most conclusively the injury could have been produced in this way, and no other theory is or can be suggested consistently with the evidence. No doubt, the engine came against the car with great power, and, the springs at the end of the bars giving away, the tender and car were forced

together. Had the bars been of the usual length, it seems almost certain the accident would have been avoided.

It is contended, if there was negligence in the construction of the coupling used, it was slight, and might have been overlooked by the most careful management. We can not concur in this view.

The proof shows there was a very radical defect in the manner of the construction of this particular coupling used on appellant's car. It is proven to have been positively dangerous, and so notorious was its reputation among the operatives in the yards, that its dangerous character ought to have been, or could have been, known by the exercise of reasonable diligence by the officers of the company whose duty it was to build and repair machinery.

Nor do we think the injury can be attributed to carelessness on the part of appellee. He had not been long in the employ of appellant, in that particular service.

It was the duty of the company to furnish suitable and safe machinery, and the law imposes upon all railroad companies a high degree of care in this regard. *Chicago, Alton and St. Louis Railroad Co.* v. *Shannon*, 43 Ill. 338; *Chicago, Burlington and Quincy Railroad Co.* v. *Gregory*, 58 ib. 272.

The machinery and cars furnished for use ought not to be so unskillfully constructed that the slightest indiscretion on the part of the operatives would prove fatal. Such was the character of the coupling in question.

If appellee was guilty of any want of ordinary care or unskillfulness in performing his work, it was very slight. It does not appear but the same injury would have befallen the most expert operative in that line of labor. Appellee was wholly ignorant of the peculiar structure of this car, and hence no negligence can be imputed to him on entering or continuing in the service of appellant. But not so with the company. The defect that produced the accident was not caused by any recent injury to the car, but attributable to the original plan adopted for its construction. It was the

duty of the company to have caused it to be examined, and if found faulty, as it certainly was, it should not have been put on the road. It was culpable negligence to do so. Had the car been built, in the first place, on the right plan, with such regard for the safety of the operatives as the highest skill and experience would indicate was necessary, and the defect been caused through continual use, and the attention of the principal officers not called to it, nor reasonable opportunity afforded to discover it, this fact would afford an excuse for the company. But such was not the case. The evidence is conclusive to the point that any mechanic could tell that this particular coupling would be dangerous to the employees, before it was ever used. There can hardly be any controversy as to this fact.

The most serious question in the case is, whether the damages found are not excessive. It must be conceded the verdict seems high, but, in view of the permanent injury suffered by appellee, we can not say it is so excessive the judgment, for that reason alone, should be reversed. The injury was, indeed, very severe, and the pain endured very great.

The medical testimony shows there is "stiffness of the hand, so that he will never have the natural use of it." At the time appellee was hurt, he was receiving wages at the rate of $55 per month, which would aggregate him a sum over $600 a year. He has not been able since to perform manual labor, and the evidence tends to show he never will be able to do any kind of labor from which he can realize any considerable amount of wages.

Perceiving no error in the record, the judgment must be affirmed.

*Judgment affirmed.*

Mr. CHIEF JUSTICE BREESE does not concur on the question of damages. He thinks they are excessive.